USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALAM HOSPITALITY LLC,

Plaintiff,

-against-

THE HALAL GUYS FRANCHISE INC.,

Defendant.

1:25-cv-08070-MKV

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Salam Hospitality LLC, invoking the Court's diversity jurisdiction, initiated this action against Defendant The Halal Guys Franchise Inc. ("Defendant" or "THG") with the filing of a complaint. [ECF No. 1]. In the operative Amended Complaint, Plaintiff alleges that Defendant induced Plaintiff through material misrepresentations to enter into a franchise agreement and a multi-unit development agreement to open a franchised THG restaurant, and that Defendant thereafter breached the multi-unit development agreement by refusing to approve Plaintiff's proposed sites for the restaurant. *See* Amended Complaint ("AC") [ECF No. 13]. Plaintiff asserts three causes of action: (1) violation of New York General Business Law § 683; (2) violation of New York General Business Law § 687; and (3) breach of contract. *See generally* AC. The sections of the New York General Business Law that Defendant allegedly violated is commonly referred to as the New York Franchise Sales Act ("NYFSA"), N.Y. Gen. Bus. Law §§ 680, *et seq.*

Before the Court is Defendant's motion to dismiss, pursuant to Rule 12(b)(6), Plaintiff's second and third causes of action. [ECF No. 15]. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The background is drawn from the Amended Complaint as well as the executed Multi-Unit Development Agreement ("MUDA") and franchise agreement ("Franchise Agreement") entered into between the parties that are referenced in, and integral to, the Amended Complaint. The MUDA and Franchise Agreement are attached as exhibits to the Declaration of Defendant's counsel Benjamin R. Joelson, Esq. [ECF No. 16-3 (the MUDA), 16-4 (the Franchise Agreement)]. The Court may take notice of these agreements, despite not being attached to the Amended Complaint, given they are integral to, and extensively discussed by, the Amended Complaint and thus incorporated by reference. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (courts may consider the facts alleged in the complaint as well as "documents incorporated by reference in the complaint"); *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (courts may consider document on which complaint heavily relies). Indeed, Plaintiff's third cause of action is premised on Defendant's purported breach of the MUDA and Plaintiff seeks rescission of both the MUDA and the Franchise Agreement. *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (courts may rely on documents attached to complaint, incorporated by reference in the complaint, or that are integral to the complaint such as "contracts . . . on which a party's action or defense is based") (citation modified).

### I. Factual Background[1]

Mohammad Sajjad is the sole member of Plaintiff Salam Hospitality LLC and is a citizen of Nebraska. AC ¶¶ 3, 4. Defendant is a New Jersey corporation with its principal place of business in New York. AC ¶ 5. Defendant is a franchisor of restaurants under the THG brand.

[1] The facts are taken from the Amended Complaint, and for purposes of resolving this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

AC ¶ 1.[2]

In 2022, Mr. Sajjad became interested in opening a franchised THG restaurant in Omaha, Nebraska. AC ¶ 2. Defendant provided Mr. Sajjad with a Franchise Disclosure Document ("FDD"), which did not contain any representations regarding the future financial performance of franchisees or the past performance of any franchised restaurants. AC ¶¶ 3-4. On March 18, 2022, Mr. Sajjad travelled to New York City with five of his associates and met with Eric Silva, Director of Training for THG. AC ¶ 6. Mr. Silva took the group to a franchised THG restaurant located at 720 Amsterdam Avenue, New York, New York. AC ¶ 6. At the restaurant, Mr. Silva purportedly made the following representations:

- that the THG restaurant at 720 Amsterdam Ave "earned more than $2 million in revenues per year and sales were continuing to grow";
- the "group was lucky to even get a seat as the [720 Amsterdam Ave restaurant] was typically so busy during lunchtime";
- all other THG franchises "were doing the same or better than the" 720 Amsterdam Ave restaurant;
- "if a franchisee ever had any operational issues, the franchisor or one of its affiliates would 'buy out the site' and operate it themselves, because they were typically so profitable"; and
- Mr. Sajjad's "first franchised business could be open and operating within six months."

AC ¶ 7.

Later that day, Mr. Silva brought Mr. Sajjad and his associates to observe a THG food truck in New York City. AC ¶ 8. In a "cab ride on the way to the food truck," Mr. Silva allegedly stated that "a number of franchised locations were on the verge of opening, including franchises in Denver, Colorado and Las Vegas, Nevada." AC ¶ 8. Plaintiff alleges that "[i]n reality, these

[2] The Court notes that the paragraphs in the Amended Complaint are not numbered consecutively. The numbering of the paragraphs restarts on page 2 of the Amended Complaint. *See* AC at 1-2. The Court refers to the paragraph numbers as they appear in the Amended Complaint.

locations were not on the verge of opening, and in fact never opened." AC ¶ 8.

At the food truck, Mr. Silva allegedly told Mr. Sajjad that "food trucks' sales were growing year over year due to the strength of the brand" and that THG was "outperforming its competitors by a landslide." AC ¶ 9. Mr. Silva then purportedly informed Mr. Sajjad that THG was not offering food truck franchises at that time but that if Mr. Sajjad "did his business up right" a brick and mortar THG restaurant "would make even more money than the food trucks." AC ¶ 10. Mr. Silva allegedly went on to state that "brick and mortar was the future and now was the ideal time to invest in a THG franchised business." AC ¶ 10.

Plaintiff alleges "[u]pon information and belief, [that] none of the representations made by Mr. Silva, at the Restaurant, in the cab, or while standing outside of the food truck, were true." AC ¶ 14. Plaintiff alleges that it relied on these "improper representations" and as a result, on April 4, 2023, entered into the MUDA, in which it agreed to develop five THG franchised restaurants pursuant to five franchise agreements. AC ¶ 16; *see also* MUDA [ECF No, 16-3]. Pursuant to the MUDA, Plaintiff paid a $180,000 development fee and had to open its first restaurant by March 29, 2024. AC ¶¶ 17-18. Plaintiff simultaneously entered into the first of the five franchise agreements. AC ¶ 16; *see also* Franchise Agreement [ECF No. 16-4].

Relevant here, Section 7.1 of the MUDA requires Plaintiff to locate potential sites for the franchised restaurants and provides that Defendant has thirty days thereafter to approve or disapprove the site. AC ¶ 19; MUDA § 7.1. Defendant cannot "unreasonably withhold or delay" its consent to a proposed site. MUDA § 7.1; AC ¶ 19. Further, Section 8.1 provides that Defendant will approve a site "if the site meets [its] criteria." MUDA § 8.1; AC ¶ 20.

Plaintiff alleges that it submitted approximately ten proposed sites for its THG branded restaurants, all of which purportedly met Defendant's criteria. AC ¶ 22. However, Plaintiff alleges that Defendant unreasonably and without justification rejected all ten proposed sites. AC ¶ 22.

Given the rejections, Plaintiff requested an extension of the deadline to open its first restaurant and submitted a new proposed site on April 1, 2025, which was again unreasonably rejected on the same day. AC ¶¶ 23-34.

Relevant to Plaintiff's claims of oral misrepresentations, Section 17.5 of the MUDA provides that Plaintiff agrees that the MUDA shall:

> supersede and cancel any prior and/or contemporaneous oral or written communications (whether described as representations, inducements, promises, agreements or any other term) between you or anyone acting on your behalf and us or anyone acting on our behalf, which might be taken to constitute agreements, representations, inducements, promises or understandings (or any equivalent to such terms) with respect to the relationship between the parties with respect to the subject matter hereof and that no reliance is being or will be placed on any such written or oral communications[.]

MUDA § 17.5. Further, section 18.1 of the MUDA provides that:

> YOU ACKNOWLEDGE THAT NO REPRESENTATIONS OR PROMISES WERE MADE TO YOU OTHER THAN THOSE SET FORTH IN OUR FRANCHISE DISCLOSURE DOCUMENT, OR THAT IF ANY OTHER REPRESENTATIONS OR PROMISES WERE MADE TO YOU, YOU ARE NOT RELYING ON THEM.

MUDA § 18.1 (capitalization in original).

The Franchise Agreement has similar disclaimers. *See, e.g.*, Franchise Agreement §§ 22.1.1, 22.1.2, 24.2, 25, Ex. J. Exhibit J to the Franchise Agreement is a questionnaire aimed at determining "whether any statements or promises were made to [Plaintiff] by employees or authorized representatives of the Franchisor . . . that have not been authorized, or that were not disclosed in the Disclosure Document or that may be untrue, inaccurate or misleading." Franchise Agreement, Ex. J. Plaintiff answered in the negative for all questions that pertained to whether any person speaking on behalf of Franchisor made any statement regarding money, revenue, costs, likelihood of success, or support services/assistance that Franchisor would offer, that is contrary or different from the information in the Franchise Agreement or the FDD. *See* Franchise

Agreement, Ex. J.

**II. Procedural History**

Plaintiff initiated this case with the filing of a complaint in which Plaintiff asserts three claims. [ECF No. 1]. In the operative Amended Complaint, Plaintiff asserts that, through Mr. Silva's conduct, Defendant violated New York General Business Law § 687 by making false and misleading representations in order to induce Plaintiff to enter into the MUDA and Franchise Agreement. AC ¶¶ 44-53. Further, Plaintiff asserts Defendant breached the MUDA by unreasonably refusing to approve any of Plaintiff's proposed sites. AC ¶¶ 54-62. As a result of the breach, Plaintiff seeks rescission of the MUDA and the Franchise Agreement. AC ¶ 62. Further, Plaintiff alleges it was damaged "in an amount exceeding $180,000." AC ¶ 61.

Defendant filed a pre-motion letter concerning its anticipated motion to dismiss that outlined the alleged deficiencies of Plaintiff's original complaint. [ECF No. 10]. The Court granted Defendant leave to file its motion to dismiss, but also granted Plaintiff leave to file an amended complaint to address the purported deficiencies identified in Defendant's pre-motion letter. [ECF No. 12]. The Court explicitly warned that "[t]his will be Plaintiff's last opportunity to amend his complaint to cure any deficiencies identified in Defendant's pre-motion letter." [ECF No. 12]. Plaintiff filed the operative Amended Complaint. [ECF No. 13].

Thereafter, Defendant filed its motion to dismiss, addressed to Plaintiff's second and third causes of action only. [ECF No. 15]. The motion is supported by a memorandum of law ("Mem."), [ECF No. 17], and a declaration of Benjamin R. Joelson, Esq., with accompanying exhibits. [ECF No. 16]. Plaintiff filed an opposition ("Opp'n"), [ECF No. 20], and a declaration of Mohammad Sajjad. [ECF No. 19]. Defendant filed a reply ("Reply"). [ECF No. 23].

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must include

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

### I. Plaintiff Has Failed To Plausibly State A Claim Under Section 687 of the New York General Business Law.

Plaintiff's second cause of action is plead under the anti-fraud provisions of the NYSFA, N.Y. Gen. Bus. Law § 687. AC ¶¶ 44-53. Plaintiff argues that Defendant fraudulently induced it to enter the MUDA and Franchise Agreement through Mr. Silva's false and misleading representations. AC ¶¶ 44-53. Section 687 provides, in relevant part, that:

> It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:
>
> (a) Employ any device, scheme, or artifice to defraud.
>
> (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.
>
> (c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.Y. Gen. Bus. Law § 687(2).

To plausibly state a claim under Section 687, a plaintiff must allege that "(1) defendant

made an untrue or misleading statement of material fact, and that (2) the plaintiff reasonably relied on that statement, (3) causing harm to the plaintiff." *Coraud LLC v. Kidville Franchise Co., LLC*, 121 F. Supp. 3d 387, 393 (S.D.N.Y. 2015) (citation modified); *Governara v. 7-Eleven, Inc.*, No. 13-cv-6094 (LAP), 2014 WL 4476534, at *4 (S.D.N.Y. Aug. 20, 2014); *Emfore Corp. v. Blimpie Assocs.*, 51 A.D.3d 434, 435, 860 N.Y.S.2d 12, 14 (1st Dep't 2008) ("The court correctly held that reliance is an element of a fraud claim under" Section 687 because "[s]ubsumed in the definition of 'fraud' is the notion of reliance, since a plaintiff must show reliance to sustain a fraud claim").[3] Notably, a plaintiff need not plead scienter to state a claim under Section 687 given that "it is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act." N.Y. Gen. Bus. Law § 687(2)(b); *see also In Re: Nine W. LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023) ("Plaintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint."); *Cmty. Care Companions, Inc.*, 2025 WL 929407, at *16 (scienter not an element of Section 687 claim); *Governara*, 2014 WL 4476534, at *4 (same).

As an initial matter, Defendant argues that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to Plaintiff's Section 687 claim sounding in fraud. Mem. at 8. Plaintiff does not contest the application of Rule 9(b) and merely asserts its pleading meets the heightened standard. Opp'n at 8-9.

The Court finds that Plaintiff's Section 687 claim, which sounds in fraud and is entirely premised on Mr. Silva's alleged misrepresentations and omissions, is subject to the Rule 9(b)

[3] The Court notes that neither the New York Court of Appeals nor the Second Circuit has articulated the elements of a claim under Section 687. However, courts in the Eastern District of New York articulate the same standard set forth above. *See Cmty. Care Companions, Inc. v. Interim Healthcare, Inc.*, No. 19-cv-4870 (PKC) (LGD), 2025 WL 929407, at *16 (E.D.N.Y. Mar. 27, 2025), r*econsideration denied*, No. 19-cv-4870 (PKC) (LGD), 2025 WL 1616585 (E.D.N.Y. June 6, 2025) (scienter not an element of Section 687 claim); *Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*, 632 F. Supp. 3d 91, 112 (E.D.N.Y. 2022).

heightened pleading standard. *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 103 (2d Cir. 2014) (describing claim of false promises to induce plaintiff to enter into a franchise agreement under Section 687 as a fraud claim). Indeed, Rule 9(b) by its terms extends to all claims that sound in fraud. *Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004) ("Rule 9(b) applies when the claim sounds in fraud."); *see also Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 387 (S.D.N.Y. 2016) (Rule 9(b) applies to "all averments of fraud or mistake whatever may be the theory of legal duty—statutory, common law, tort, contractual or fiduciary") (quoting *Frota v. Prudential–Bache Secs. Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)).

In applying Rule 9(b) to Plaintiff's Section 687 fraud claims, the Court's decision is in line with what appears to be the only two cases that have specifically addressed this issue. *See Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*, 632 F. Supp. 3d 91, 111 (E.D.N.Y. 2022); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 356-57 (E.D.N.Y. 2014). The court in *Schwartzco* assumed without deciding that Rule 9(b) applied and explained that Rule 9(b)'s application to the NYFSA was likely section-specific and would apply to the "anti-fraud provisions" of Section 687, but not to other provisions which simply govern disclosure obligations for a seller of a franchise, such as Section 683. *See Schwartzco*, 60 F. Supp. 3d at 356-57. The court in *Sea Tow* explicitly held that Rule 9(b) applies to a Section 687 claim sounding in fraud that was premised on misrepresentations and omissions. *Sea Tow*, 632 F. Supp. 3d at 111-12.

With these standards in mind, the Court turns to Defendant's argument for dismissal of Plaintiff's Section 687 claim.

Defendant principally argues that Plaintiff's Section 687 claim must be dismissed because Plaintiff fails to allege with particularity how or why any of Mr. Silva's alleged statements were false or misleading. Mem. at 8-9. Plaintiff argues that it need not explain "why" they were false beyond alleging they were untrue and that Defendant is essentially requiring it to prove the

statements' falsity at the pleading stage. Opp'n at 8-9. Defendant argues that it is not demanding proof of anything but rather that Plaintiff must plausibly articulate why Mr. Silva's statements are false beyond conclusory allegations. Reply at 3-4.

It is well settled that pursuant to Rule 9(b), for claims sounding in fraud, a plaintiff must allege why a claim is false or misleading with particularity. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (Rule 9(b) requires that a plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) *explain why the statements were fraudulent*") (citation modified) (emphasis added); *Stary v. Teladoc Health, Inc.*, No. 24-cv-3849 (KMK), 2026 WL 878939, at *5 (S.D.N.Y. Mar. 31, 2026) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the allegedly false or misleading statements were actually false or misleading when made."); *Sea Tow*, 632 F. Supp. 3d at 112 (holding that misrepresentation under Section 687 must be plead "with particularity" and dismissing claim under Section 687 in part because plaintiff failed to articulate "how" a given misrepresentation was fraudulent). Indeed, despite protesting that it need not allege "why" Mr. Silva's representations were false or misleading, Plaintiff's own opposition and cited authorities recognize that, pursuant to Rule 9(b), it must "explain why the statements were fraudulent." Opp'n at 8-9 (citing *Rombach*, 355 F.3d at 170 and *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp 2d 239, 253 (S.D.N.Y. 2009) (plaintiff must "identify the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent")).

Here, while the Amended Complaint identifies with particularity the statements made, the identity of the speaker (Mr. Silva), and when and where they were made, *see* AC ¶¶ 6-10, it nonetheless falls short in pleading with particularity *why* or *how* any of Mr. Silva's statements were fraudulent. After recounting all of Mr. Silva's alleged statements, Plaintiff offers only the

generalized and conclusory allegation that "[u]pon information and belief, none of the representations made by Mr. Silva, at the Restaurant, in the cab, or while standing outside of the food truck, were true. Mr. Silva did not have a basis to make any of the representations." AC ¶ 14. Such a conclusory allegation bereft of factual support to demonstrate why, in Plaintiff's view, the statements were false or misleading, is insufficient. *See Sea Tow*, 632 F. Supp. 3d at 112 (dismissing NYFSA claim, in part, because "[t]here are no facts articulating how [a certain] misrepresentation was fraudulent"); *see also In re Tempur Sealy Int'l, Inc. Sec. Litig.*, No. 17-CV-2169 (LAK), 2019 WL 1368787, at *6 (S.D.N.Y. Mar. 26, 2019) (explaining that under Rule 9(b) "[w]hen a plaintiff alleges that a statement is false or misleading based on information and belief, the plaintiff must state facts sufficient to support that belief. . . . Conclusory or unsupported allegations are insufficient.").[4]

As Defendant notes, with respect to the allegation that Mr. Silva "told Sajjad that a number of franchised locations were on the verge of opening, including franchises in Denver, Colorado and Las Vegas, Nevada," Plaintiff does separately allege that "[i]n reality, these locations were not on the verge of opening, and in fact never opened." AC ¶ 8. However, even this slightly more specific allegation is still insufficient because it offers no actual factual basis for the bare allegation that Mr. Silva's statement was false when made. *See Nanopierce Techs. v. Southridge Cap. Mgmt. LLC*, No. 02-cv-0767 LBS, 2003 WL 21507294, at *10 (S.D.N.Y. June 30, 2003) ("If 'explain

[4] In addition to failing to plead with particularity why any of Mr. Silva's statements are false or misleading, certain of the purported misrepresentations are plainly immaterial and constitute non-actionable puffery. Specifically, Mr. Silva's statements that (1) "the group was lucky to even get a seat as the Restaurant was typically so busy during lunchtime," (2) that if Plaintiff "did his business up right" than it could make even more than the food truck franchises, and (3) that brick and mortar was the future, amount to non-actionable exaggerations. These statements are exaggerations "expressed in broad, vague and commendatory language" as well as "exaggerated blustering and boasting statements" upon which "no reasonable buyer would be justified in relying." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (citation modified); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("[S]tatements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events."); *Trahan*, 457 F. Supp. 3d 323, 350 (S.D.N.Y. 2020) ("[S]peculation and expressions of hope for the future are not actionable representations of fact under common law theories of fraud.") (citation modified).

why' [under Rule 9(b)] is to have any meaning, it must mean more than merely contradicting a statement, and offering as support a rewording of that statement in the negative.").[5]

Accordingly, since Plaintiff fails to allege with particularity why any of Mr. Silva's statements were false or misleading, Plaintiff's Section 687 claim is dismissed.

## II. Plaintiff Has Plausibly Stated A Breach Of Contract Claim

Plaintiff alleges that Defendant breach the MUDA by "refus[ing] to approve any of the proposed sites." AC ¶ 60. As a result of this purported breach, Plaintiff seeks $180,000 or more in damages and/or rescission of the MUDA and Franchise Agreement. AC ¶¶ 61, 62. Defendant does not argue that Plaintiff has failed to plausibly state a breach of contract. Rather, Defendant argues the breach of contract claim must be dismissed because the remedies Plaintiff seeks for such a breach run afoul of the sole remedy provisions of the MUDA and the Franchise Agreement. Mem. at 17-19. The MUDA and Franchise Agreement both provide that Plaintiff's sole remedy

[5] Since the Court dismisses the claim on this basis, it need not reach Defendants' alternative bases for dismissal, namely (1) a failure to plead scienter and (2) a lack of a lack of reliance given the disclaimer provisions in the MUDA and the Franchise Agreement. Mem. at 10-16. As noted, a Plaintiff need not plead scienter to state a claim under Section 687 because lack of scienter is an affirmative defense under the statute and need not be plead in the complaint. *See* N.Y. Gen. Bus. Law § 687(2)(b); *In Re: Nine W. LBO Sec. Litig.*, 87 F.4th at 144. With respect to Defendant's argument that Plaintiff disclaimed any reliance on any of Mr. Silva's oral statements by virtue of the disclaimers in the MUDA and the Franchise Agreement, such an argument is likely foreclosed by Section 687's anti-waiver provisions, which provide that:

> "[a]ny condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law, or rule promulgated hereunder, shall be void" and make it unlawful "to require a franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by this article."

N.Y. Gen. Bus. Law §§ 687(4)-(5). Interpreting these provisions, New York state courts have universally rejected the argument that similar disclaimers in franchise agreements can bar a claim under Section 687. S*ee S. Shore D'Lites, LLC v. First Class Prods. Grp., LLC*, 237 A.D.3d 487, 488, 232 N.Y.S.3d 8, 10, *leave to appeal dismissed*, 44 N.Y.3d 1019, 271 N.E.3d 1237 (1st Dep't 2025) ("[C]ontrary to defendants' contention, the boilerplate merger and no-oral modification clauses in the franchise agreement are invalid and unenforceable as a defense to the fraud claim under the Franchise Act."); *Emfore*, 51 A.D.3d at 435, 860 N.Y.S.2d at 14 ("[D]efendant, in direct contravention of the laudatory goal it claims to be advancing, is asking this Court to construe the representations made by plaintiff in the questionnaire as a waiver of fraud claims. Such waivers are barred by the Franchise Act. Accordingly, defendant's attempt to utilize the representations as a defense must be rejected."); *see also Coraud LLC v. Kidville Franchise Co.*, 109 F. Supp. 3d 615, 620-21 (S.D.N.Y. 2015) (holding that disclaimers in franchise agreement cannot bar a fraud action under Section 687); *but see Governara*, 2014 WL 4476534, at *6-7 (departing from *Emfore* and reasoning that the state's highest court would decide otherwise).

for Defendant's failure to provide consent to a prosed site is specific performance or declaratory judgment. MUDA § 17.4; Franchise Agreement § 24.6.

Relevant here, the MUDA provides:

> If you make any claim or assertion that we have unreasonably withheld or delayed any consent or approval to a proposed act by you under the terms of this Agreement, you agree that your sole remedy for the claim will be an action or proceeding to enforce the Agreement provisions, for specific performance or for declaratory judgment.

MUDA § 17.4. While Plaintiff does not specifically allege Defendant has breached the Franchise Agreement, that agreement similarly provides that:

> In no event may you make any claim for money damages based on any claim or assertion that we have unreasonably withheld or delayed any consent or approval under this Agreement. You waive any such claim for damages. You may not claim any such damages by way of setoff, counterclaim or defense. Your sole remedy for the claim will be an action or proceeding to enforce this Agreement's provisions, for specific performance or for declaratory judgment.

Franchise Agreement § 24.6.

Under New York law, "courts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities." *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 352, 165 N.E.3d 180, 186, 141 N.Y.S.3d 410 (N.Y. 2020) (quoting *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581, 92 N.E.3d 743, 69 N.Y.S.3d 520 (N.Y. 2017)). Further, contractual terms that provide for a "sole remedy are sufficiently clear to establish that no other remedy was contemplated by the parties at the time the contract was formed, for purposes of that portion of the transaction, especially when entered into at arm's length by sophisticated contracting parties." *Id.* (citation modified).

The Court declines at this stage of the proceedings, to dismiss Plaintiff's breach of contract

claim on the basis that Plaintiff seeks remedies that are not provided for in the sole remedy provisions of the MUDA and Franchise Agreement. As an initial matter, it does not appear Plaintiff is a sophisticated contracting party. In any event, the New York Court of Appeals recognizes that where the granting of specific performance is impossible or impracticable, a court in "equity may award damages in lieu of specific performance." *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d at 356, 165 N.E.3d at 186, 141 N.Y.S.3d 410; *see also Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443, 136 N.E.2d 484, 154 N.Y.S.2d 10 (N.Y. 1956) ("[W]here the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy.").

Plaintiff asserts the sole remedy provisions are illusory because the proposed sites have been rejected and can no longer be rented to set up its franchise THG restaurant given the passage of time. Opp'n at 24. Defendant responds that the sole remedy provision is not illusory because Plaintiff "can seek a declaration from this Court that it is permitted to develop a restaurant in a particular location or an order requiring Halal Guys to consent to a particular location." Reply at 10. However, Defendant fails to explain how the Court "ought to determine a remedy's adequacy at this stage." *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 557 (S.D.N.Y. 2014) ("Because it is conceivable that the legal remedies available to Plaintiff would fall short in this regard, it would be premature for the Court to strike an equitable remedy at this stage without a decisive reason for doing so."); *see also Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12–cv–1579, 2012 WL 3525613, at *7 (S.D.N.Y. Aug. 15, 2012) (rejecting defendant's argument that "sole remedy" of a repurchase obligation precluded an award of rescissory damages, ruling that "[i]t would be premature to strike a remedy at the pleadings stage").

Moreover, the Court notes that the Second Circuit, in addressing the interplay between a

sole remedy provision and the New York Uniform Commercial Code, held generally that under New York law "it seems to us unlikely that parties to a contract may, as a matter of law, contractually limit a buyer's right to the equitable remedy of rescission." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 229 (2d Cir. 2017). While the Second Circuit also found that the agreement at issue did not explicitly bar the remedy of rescission, the Second Circuit made clear that "it would be odd at best to allow the availability of [the remedy of rescission] to be curtailed by the very contract that the plaintiff seeks to rescind" given "the effect of rescission is to declare a contract void from its inception." *Id.* (citation modified).

Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim at this stage of the proceedings. The Court cannot, without more factual development, assess the practicality and possibility of the remedies provided by the sole remedy provision in the MUDA.

**III. Leave To Amend**

Plaintiff requests that it be granted leave to amend should the Court find any claim insufficiently pled. Opp'n at 25. Plaintiff argues that it has "not yet had the benefit of discovery, and any perceived pleading deficiencies are curable through amendment." Opp'n at 25. Defendant opposes the request. Reply at 11.

The Court will not grant Plaintiff further leave to amend to salvage its inadequately plead Section 687 claim. As an initial matter, a request for discovery cannot serve as a basis to allow further amendment. *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim."). Moreover, Plaintiff has already been afforded an opportunity to amend in the face of Defendant's pre-motion letter that outlined the basis for its contemplated motion, which

included the specific argument that Plaintiff had failed to allege that the representations identified in the original complaint were "false or misleading in any way." [ECF No. 10]. In permitting Plaintiff leave to amend in the face of the pre-motion letter, the Court made clear that "[t]his will be Plaintiff's last opportunity to amend his complaint to cure any deficiencies identified in Defendant's pre-motion letter." [ECF No. 12].

Since Plaintiff has been provided an opportunity to amend in the face of Defendant's argument that it had failed to adequately allege why Mr. Silva's representations were false or misleading and because Plaintiff fails to explain how any further amendment would cure the defect that its Amended Complaint already failed to cure, Plaintiff is denied leave to further amend. *See Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (summary order) ("[W]ithout any indication by appellants of how further amendment would cure the deficiencies in pleading, we ordinarily do not find an abuse of discretion where appellants have already had ample time to amend the complaint.") (citation modified); *Auth Token LLC v. City Nat'l Bank*, 817 F. Supp. 3d 211, 226 (S.D.N.Y. 2026) ("Where a plaintiff has already amended after notice of the same defects and fails to explain how further amendment would cure them, denial of leave is often appropriate."). Plaintiff's Section 687 claim is thus dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. Plaintiff's second cause of action under Section 687 of the New York General Business Law is dismissed with prejudice. Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

Defendant shall file an answer within 14 days of this Order.

The Clerk of Court is respectfully requested to terminate docket entry 15.

**SO ORDERED.**

**Date: September 28, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**